**UNITED STATES COURTHOUSE**
**501 West 5th Street, suite 3300**
**Austin, Texas 78701-3885**

FILED

2025 MAR 12 AM 10: 44

CLERK, US DISTRICT COURT
WESTERN DISTRICT OF TEXAS

1:25CV00370

ADA

Cedric Earl Hill,
          Plaintiff

Case No. _____
To be Supplied by Clerk

V.

1) Joseph Moran(Badge No. AP8418)
2) Arika Austin (Badge No. AP7404)
3)Terrell Ellis (Badge No. AP9229)
4) James Alexander (Badge No. AP3628)
5) Matthew Chorzewski (Badge No.AP9218)
6) Terrell Ellis (Badge No.Ap9229)
7) Andres Padilla (Badge No.AP8936)
8) Gregoryy (Badge AP9119)
9)Blake Zimmermann (AP8610)
10) Austin Arika (Badge AP7404)
11) Brice Bishop (BadgeAP8193)

### COMPLAINT AND JURY DEMAND

Plaintiff, CEDRIC EARL HILL Pro SE, Complaining of defendants, respectfully allege as follows:

### JURISDICTION AND VENUE

1. This is a civil rights action in which Plaintiff seeks relief for the violation of his rights secured by 42 U.S.C. Section 1983, the Fourth, Fifth and Fourteenth Amendments of the United States Constitution.

2. Jurisdiction of this Court is found upon 28 U.S.C. Section 1331 since this action arises under the Constitution and the Laws of the United States.

3. Venue is proper in the United States District Court for the Western District of Texas Austin Division because the events complained of occurred in this district.

4. Pursuant to 42 U.S.C. Section 1983, and other applicable laws, the Court may award nominal, compensatory, and punitive damages, as well as equitable relief against all of the defendants in their individual and official capacity, for the violations of Plaintiffs Constitutional rights and harm caused by their actions/inactions.

## PARTIES

5. Plaintiff, Cedric Earl Hill, ("Plaintiff" or "Mr. Hill"), is a law abiding citizen of the State of Texas.

6. Upon information and belief, all defendants are being sued in their individual, and or Official Capacities as permitted by law.

### 7. <u>STATEMENT OF FACTS</u>

8. On December 11, 2021, an anonymous caller placed a call to 311 to make a complaint about a man sitting on the bed of his truck and playing loud music and arguing with passersby. The call was transferred to 911 and the anonymous caller stated that this call was not for an emergency, that he did not request police presence, and that he did not want to share any identifying information about himself.

9. Minutes later, a battalion of police officers arrived on the scene wearing tactical gear, holding long rifles and shotguns, flanking Mr. Hill on all sides. The scene looked like a military operation. Austin Police Officer Chorzewski, holding a long gun pointed directly at Mr. Hill, was so eager to approach that he is reeled back by Officer Bishop.[1] They

1

descended on Mr. Hill as he was sitting on the bed of his parked truck, in the parking of the apartment complex where he lives. They hid behind cars, pointing both less-lethal and lethal firearms at Mr. Hill and screaming orders at him. As they approach their target, Officer Bishop advises Officer Chorzewski to be ready for either a "headshot or quarter shot", referring to where to aim a lethal round at Mr. Hill, who was still sitting on the bed of his truck.[2]

10. Immediately police ordered Mr. Hill to put his hands in the air. He complied. Police ordered Mr. Hill to turn around. He again complied. Behind every order, police yelled at Mr. Hill, threatening that if he did not comply with orders immediately, Mr. Hill would be "impacted", referring to being shot with a beanbag round from a shotgun.[3] Mr. Hill, still with his hands in the air, turns around as ordered, asking, "What did I do?"[4] Mr. Hill complies with police orders to put his hands on the back of his head and move backwards toward them.[5]

11. Officer Bishop moves closer to Mr. Hill, still pointing a shotgun loaded with a beanbag round directly at Mr. Hill. Mr. Hill continues to ask, "What did I do," shocked at the large police presence and the number of guns pointed at him.[6] Officer Bishop mentions to Officer Chorzewski, "I've got enough to bag him right now...", indicating a willingness to shoot Mr. Hill with a beanbag while he is still complying with orders from police.[7] The

---

[2] *Id.* at 3:43.
[3] *Id.* at 3:33.
[4] *Id.* at 4:13.
[5] *Id.* at 5:09.
[6] *Id.* at 7:12.
[7] *Id.* at 7:15.

officers scuttle up to Mr. Hill, still pointing weapons at him. Officer Bishop then switches to holding his taser and points it at Mr. Hill, while Officer Chorzewki follows alongside with a long rifle still pointed at Mr. Hill.[8] Officer Chorzewki removes Mr. Hill's hands from the back of his own head and handcuffs him. Police then take Mr. Hill's firearm from its holster, enter Mr. Hill's car, remove the key from the ignition, and begin to search it.

12. Austin Police Officers then spend the rest of their interaction with Mr. Hill struggling to brainstorm how to justify the arrest they had just made. Having trouble making heads or tails of recent changes to the penal code with respect to the possession of firearms, Officers split up to try to drum up cause, while Mr. Hill remains handcuffed and held by other officers.

13. While Mr. Hill is handcuffed, Austin Police Officer Bishop leaves Mr. Hill's car and returns to his own car to use his laptop for almost half an hour.[9] Officer Bishop goes through Mr. Hill's criminal history in hopes of finding a criminal conviction that would justify a charge. At first, he believes he found that Mr. Hill had a felony conviction but is mistakenly looking at a different Black man's criminal history. Officer Bishop speaks to another officer on the phone, letting him know Mr. Hill is a felon and that he has two convictions for possession of a firearm with a felony conviction.[10] During this conversation, Officer Bishop's laptop shows the mugshot of a completely different individual sharing only one similarity with Mr. Hill – his race.

14. When he realizes his mistake, he tries again to search Mr. Hill's criminal history for a criminal conviction or anything else that would prohibit him from lawfully possessing a

---

[8] *Id.* at 8:14.
[9] *See id.* at 13:56.
[10] *See id.* at 29:50.

firearm. He even radios in a request for an e-mail with Mr. Hill's criminal history.[11] Officer Bishop fails to drum up any criminal conviction to prohibit Mr. Hill from lawfully owning a firearm, or anything else to support the arrest he had just made. At this point, Officer Bishop is frustratingly out of luck in conjuring a probable cause justification for an arrest he had already made.

15. Officer Bishop then toggles back and forth between his paperwork on Mr. Hill and the Texas Penal Code, reading slowly and meticulously through various subsections, trying to find any justification for Mr. Hill's arrest. While still looking through the Penal Code, Office Bishop receives a call on his cell phone and is asked to justify the detention.[12] He tells the officer on the other end of the line that, "[Mr. Hill] was detained because he was extremely intoxicated, had the weapon on his hip, and was, like, walking up and down the sidewalk." To be clear, the anonymous 311 call and the officers' body worn camera do not reflect Mr. Hill ever stepping onto the sidewalk. Officer Bishop then tells the other officer, "In terms of an actual violation, I'm, um, still having to figure that out at the moment....", making clear that Officer Bishop had no probable cause to believe that Mr. Hill had committed any crime.

16. Although Officer Bishop claimed that Mr. Hill was intoxicated, Police did not conduct any sobriety testing on Mr. Hill. Police found only one 12-ounce bottle of beer in the bed of Mr. Hill's truck which was emptied of most of its contents by police. No additional alcohol was found near Mr. Hill and no sobriety testing or other investigation into intoxication was performed by police, aside from Officer Chorzewki's inquiry to an EMT on the scene about

---

[11] *See id.* at 19:31.
[12] *See id.* at 22:00.

possible intoxication.[13] In an attempt to try to generate cause for Mr. Hill's arrest, Chorzewski asks the EMT, "Did you smell anything over there when you were talking to him?" The EMT unequivocally says, "No."

17. While Officer Bishop was in his car trying to justify the arrest of Mr. Hill, Officer Chorzewski was unequivocally told that police had no probable cause to justify the arrest of Mr. Hill on any weapon charge.[14] Officer Chorzewski spoke with Corporal Austin, who asked Chorzewski, "…Were you all trying to arrest him because he had a weapon?" Officer Chorzewski replies that he was, and officer Austin responds, "Well, thing is that, uh, Sergeant Metcalf reached out to Detective Maid and we don't have an arrest on anything gun related…"[15] Despite that fact, Officer Chorzewski still decided to go to his patrol car and bring it to the scene so he could put Mr. Hill inside of it, showing he would arrest him anyway.[16]

18. Mr. Hill was arrested immediately upon the arrival of police. He was held at gunpoint, ordered not to move, threatened with being shot, and handcuffed by police. All the while, Police Officers were abundantly aware they had no justification to support this arrest. Nonetheless, Mr. Hill was transported to jail and was being prosecuted on the instant charge.

---

[13] *See* Officer Chorzewski BWC at 27:50
[14] *See id.* at 19:00.
[15] *Id.* at 19:10.
[16] *See id.* at 20:15.

5

19. Mr. Hill was charged in County Court 8 Travis County under Cause No. C-1-CR-21210751 with resisting arrest search or transport and he requested a Motion to Suppress which was Granted and all charges were dismissed on 3/21/2023.

20. Mr. Hill also has a dismissal under Cause N0. C-1-CR-21210750 which was supposed to be the charge "Intoxication" but on this dismissal it also states resisting arrest search or transport.

## COUNT I
## VIOLATION OF CIVIL RIGHTS UNDER 42 U.S.C SECTION 1983 (FOURTH AMENDMENT- WARRANTLESS NO PROBABLE CAUSE UNREASONABLE ARREST/ SEIZURE)

**The Fourth Amendment prohibits "unreasonable searches and seizures." And a Fourth Amendment claim based on an unreasonable seizure has two indispensable elements: (i) there must have been a "seizure," i.e., an arrest or some other use of "'physical force' or a 'show of authority' that 'in some way restrain[s] the liberty' of [a] person," Torres v. Madrid, 592 U. S. ___, ___ (2021) (slip op., at 3), and (ii) the seizure must have been "unreasonable," which means, in the case of a full-blown arrest, that the officers making the arrest must have lacked probable cause. District of Columbia v. Wesby, 583 U. S. ___, ___ (2018) (slip op., at 7).**

Restated: The arrest of Mr. Hill was unreasonable as it lacked the requisite arrest warrant and probable cause Plaintiff Mr. Hill submitted immediately to police authority and was handcuffed by Austin Police Officers within seconds of their approach. However, as borne out by the body worn camera of Officer Bishop, Austin Police had no specific, articulable facts to support the arrest. Officer Bishop spent almost thirty minutes in his car, fishing for information to support an arrest, making phone calls to superiors asking for advice, and making incorrect assumptions about Mr. Hill's criminal history in order to identify anything he could say at all to support the police's decision to arrest Mr. Hill. **6**

21. After the unlawful seizure of Mr. Hill, police searched his truck, removed his firearm from its holster and unlawfully held this property which they intended to introduce at trial but the evidence was suppressed and all charges were dismissed against Mr. Hill.

**7**

22. The officers in this case had no reliable information to form a reasonable suspicion that criminal activity was afoot. Police responded to a 311 call from an anonymous caller making a complaint about a man sitting in a truck in a parking lot, listening to loud music and carrying a firearm in a holster. The caller made it clear that there was no emergency requiring police response. Armed police responded nonetheless. Once police arrived, they observed no criminal activity whatsoever. Again, when police arrive, Mr. Hill was sitting on the bed of his truck, listening to music, with a holstered firearm on his hip, all conduct that is permitted under Texas law.

Officer Bishop received a call and was advised that there was no probable cause to arrest Mr. Hill. Officer Bishop was still reluctant to free Mr. Hill and stated "[Mr. Hill] was detained because he was extremely intoxicated, had the weapon on his hip, and was, like, walking up and down the sidewalk." To be clear, the anonymous 311 call and the officers' body worn camera do not reflect Mr. Hill ever stepping onto the sidewalk. Officer Bishop then tells the other officer, "In terms of an actual violation, I'm, um, still having to figure that out at the moment....", making clear that Officer Bishop had no probable cause to believe that Mr. Hill had committed any crime.

Although Officer Bishop claimed that Mr. Hill was intoxicated, Police did not conduct any sobriety testing on Mr. Hill. Police found only one 12-ounce bottle of beer in the bed of Mr. Hill's truck which was emptied of most of its contents by police. No additional alcohol was found near Mr. Hill and no sobriety testing or other investigation into intoxication was performed by police, aside from Officer Chorzewski's inquiry to an EMT on the scene about possible intoxication.[17] In an attempt to try to generate cause for Mr. Hill's arrest, Chorzewski asks the EMT, "Did you smell anything over there when you were talking to him?" The EMT unequivocally says, "No."

While Officer Bishop was in his car trying to justify the arrest of Mr. Hill, Officer Chorzewski was unequivocally told that police had no probable cause to justify the arrest of Mr. Hill on any weapon charge.[18] Officer Chorzewski spoke with Corporal Austin, who asked Chorzewski, "…Were you all trying to arrest him because he had a weapon?" Officer Chorzewski replies that he was, and officer Austin responds, "Well, thing is that, uh, Sergeant Metcalf reached out to Detective Maid and we don't have an arrest on anything gun related…"[19] Despite that fact, Officer Chorzewski still decided to go to his patrol car and bring it to the scene so he could put Mr. Hill inside of it, showing he would arrest him anyway.[20]

Mr. Hill was arrested immediately upon the arrival of police. He was held at gunpoint, ordered not to move, threatened with being shot, and handcuffed by police. All the while, Police Officers were abundantly aware they had no justification to support this arrest. Nonetheless, Mr. Hill was transported to jail and was prosecuted on the instant charge. The seizure of Mr. Hill was unreasonable and the charges were subsequently dismissed.

---

[17] *See* Officer Chorzewski BWC at 27:50.
[18] *See id.* at 19:00.
[19] *Id.* at 19:10.
[20] *See id.* at 20:15.

**8**

## COUNT II MALICIOUS PROSECUTION FOURTH AMENDMENT:

Restated all charges in this prosecution was based on a citizen calling the police with a non emergency call and all officers proceeding to the scene with no warrant and or probable cause to arrest Plaintiff, search his vehicle and or place him under arrest. The Officer's were advised that there was no probable cause to arrest plaintiff which they ignored and did so in a threatening manner with force and pursuant a motion by plaintiff's attorney for a hearing to suppress pre-trial which was granted by the court all charges were dismissed.

## MEMORANDUM OF LAW:

In order to maintain an action for malicious prosecution in Texas, a party must plead and prove that: 1) a civil judicial proceeding was previously filed; 2) the defendant in the malicious prosecution case caused the original suit to be filed; 3) the commencement of the original proceeding was malicious; 4) no probable cause existed for the filing of the original proceeding; 5) termination of the original suit in favor of the party prosecuting the later malicious prosecution action, and 6) damages conforming to the legal standards under Texas law. J. C. Penney Company v. Gilford, 422 S.W.2d 25, 28 (Tex.Civ.App. Houston (1st Dist.) 1967, writ ref'd n. r. e.); Morris v. Taylor, 353 S.W.2d 956, 958 (Tex.Civ.App. Austin 1962, writ ref'd n. r. e.), cert. den., 371 U.S. 842, 83 S.Ct. 71, 9 L.Ed.2d 78 (1962). The gravamen of an action for malicious prosecution is improperly making a party the subject of legal process to his detriment. Daniels v. Conrad, 331 S.W.2d 411, 415 (Tex.Civ.App. Dallas 1959, writ ref'd n. r. e.). Texas adheres to the rule that an award of damages for prosecution of civil suits with malice and without probable cause cannot be recovered unless the party sued, suffers some interference, by reason of the suit, with his person or property. Pye v. Cardwell, 110 Tex. 572, 222 S.W. 153 (1920); Salado College v. Davis, 47 Tex. 131 (1877); Louis v. Blalock, 543 S.W.2d 715 (Tex.Civ.App. Amarillo 1976, writ ref'd n. r. e.); Morris v. Blangger, 423 S.W.2d 133 (Tex.Civ.App. Austin 1968, writ ref'd n. r. e.). A pleading which does not allege some interference with the complainant's person or property fails to state a cause of action for malicious prosecution and is fatally defective. Smart v. Carlton, 557 S.W.2d 553 (Tex.Civ.App. Beaumont 1977, writ ref'd n. r. e.); Morris v. Taylor, 353 S.W.2d 956 (Tex.Civ.App. Austin 1962, writ ref'd n. r. e.), cert. den., 371 U.S. 842, 83 S.Ct. 71, 9 L.Ed.2d 78 (1962); Mosley v. Harkins, 147 S.W.2d 309 (Tex.Civ.App. Amarillo 1941, no writ); Shapleigh Hardware Co. v. Keeland Bros., 60 S.W.2d 510 (Tex.Civ.App. Galveston 1933, no writ).

In the instant case:
1) A civil/criminal proceeding was previously filed,
2) the defendant in the malicious prosecution case caused the original suit to be filed; **9**

3) the commencement of the original proceeding was malicious;

4) no probable cause existed for the filing of the original proceeding;

5) termination of the original suit in favor of the party prosecuting the later malicious prosecution action, and

6) damages conforming to the legal standards under Texas law.

**10**

Malicious prosecution, requires proof that "(i) the suit or proceeding was 'instituted without any probable cause;' (ii) the 'motive in instituting' the suit 'was malicious . . . ; and (iii) the prosecution 'terminated in the acquittal or discharge of the accused.'" Ante, at 6 (quoting T. Cooley, Law of Torts 180 (1880) (Cooley)); see also Manuel v. Joliet, 580 U. S. 357, 378 (2017) (ALITO, J., dissenting).

- 
  In the 2022 case Thompson v. Clark, the Supreme Court ruled that malicious prosecution claims can be brought under the Fourth Amendment.

- The court found that a pretrial detention based on an invalid charge violates the Fourth Amendment.

- The court also ruled that each charge should be evaluated individually to determine if it lacked probable cause.

- The court emphasized that the presence of probable cause for one charge does not automatically defeat a Fourth Amendment claim for seizures by other charges.

- The plaintiff must establish that an officer initiated a charge without probable cause.

- The plaintiff must also establish the common-law elements of malicious prosecution.

## COUNT THREE FALSE ARREST:

23. On December 11, 2021, an anonymous caller placed a call to 311 to make a complaint

about a man sitting on the bed of his truck and playing loud music and arguing with

passersby. The call was transferred to 911 and the anonymous caller stated that this call

was not for an emergency, that he did not request police presence, and that he did not

want to share any identifying information about himself. Officer Bishop and the ten other

**11**

24. defendants named above stormed the scene without a warrant arrested Plaintiff searched

    his vehicle and arrested Plaintiff and seized his property. Brice Bishop made the actual

    false arrest with the aide of the other defendants even though he was advised that there

    was no probable cause to arrest and or seize plaintiff, with malice Officer Brice Bishop

    tried to think of a way to make an arrest of plaintiff even though he knew that there was

    no legal basis to do so and he ignored his peers when he was told that there was no

    probable cause to arrest plaintiff.


## MEMORANDUM OF LAW:

The bill of rights, which is incorporated in our Constitution, declares that no citizen shall be deprived of life, liberty, property, etc., except by due course of the law of the land. It then declares that "everything in this 'bill of rights' is excepted out of the general powers of government, and shall forever remain inviolate and all laws contrary thereto . . . shall be void.

False imprisonment consists of imposing by force or threats an unlawful restraint upon a man's freedom of locomotion. *Prima facie* any restraint put by fear or force upon the actions of another is unlawful and constitutes a false imprisonment, unless a showing of justification makes it a true or legal imprisonment. The wrong may be committed by words alone or by acts alone, or by both, and by merely operating on the will of the individual by personal violence, or by both. All that is necessary to constitute false imprisonment is that the individual be restrained of his liberty without any sufficient legal cause therefor, and by words or acts which he fears to disregard. Any arrest or detention of a person is presumed to be unlawful and the burden is upon the defendant to show that it was lawful. (Cooley on Torts (3d ed.), 296-8.)

False imprisonment is an offense under the laws of Texas, punishable by a fine not exceeding five hundred dollars, and may be by confinement in the county jail not exceeding one year, and is thus defined: "False imprisonment is the willful detention of another against his consent, and

**12**

where it is not expressly authorized by law, whether such detention be effected by an assault, by actual violence to the person, by threats or by any other means which restrains the party so detained from removing from one place to another as he may see proper." Penal Code, art. 618.

Under the law the evidence does not justify the Austin Police Department Officers making such imprisonment of Plaintiff.

# Gold v. Campbell

Court of Civil Appeals of Texas

Mar 3, 1909

54 Tex. Civ. App. 269 (Tex. Civ. App. 1909)

## COUNT FOUR:

## VIOLATION OF CIVIL RIGHTS UNDER 42 U.S.C. SEC. 1983 (BYSTANDER LIABILITY)

25. Plaintiff restate and incorporate by reference each and every allegation set forth in all prior allegations.

26. At all times relevant herein, defendants were acting under color of State Law.

27. Defendants observed **A UNREASONABLE SEIZURE and** other constitutional violations being committed by their counterparts.

**13**

28. Defendants had the opportunity and the means to prevent harm from occurring.

29. Defendants stood by and let the harm unfold.

30. The events did not unfold over a matter of moments, giving defendants ample opportunity and time to intervene.

31. At all times relevant, Plaintiff had a clearly established right to be free from Officer's failure to intervene.

32. At all times relevant, defendant's intentionally, knowingly, maliciously, recklessly, unreasonably, and /or grossly negligently allowed their fellow officers to arrest Plaintiff without probable cause and otherwise violate Plaintiffs' constitutional and statutory rights.

### MEMORANDUM OF LAW:

The federal criminal statute that enforces Constitutional limits on conduct by law enforcement officers is 18 U.S.C. § 242. Section 242 provides in relevant part:

"Whoever, under color of any law, …willfully subjects any person…to the deprivation of any rights, privileges, or immunities secured or protected by the Constitution or laws of the United States [shall be guilty of a crime]."
Section 242 is intended to "protect all persons in the United States in their civil rights, and furnish the means of their vindication." *Screws v. United States*, 325 U.S. 91, 98 (1945) (quoting legislative history).

To prove a violation of § 242, the government must prove each of the following elements beyond a reasonable doubt: (1) that the defendant deprived a victim of a right protected by the Constitution or laws of the United States, (2) that the defendant acted willfully, and (3) that the defendant was acting under color of law.

14

## BYSTANDER LIABILITY

An officer who purposefully allows a fellow officer to violate a victim's Constitutional rights may be prosecuted for failure to intervene to stop the Constitutional violation. To prosecute such an officer, the government must show that the defendant officer was aware of the Constitutional violation, had an opportunity to intervene, and chose not to do so. This charge is often appropriate for supervisory officers who observe uses of excessive force without stopping them, or who actively encourage uses of excessive force but do not directly participate in them.

**A claim for bystander liability requires that an officer (1) knows a fellow officer is violating an individual's constitutional rights; (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act. *Whitley v. Hanna*, 726 F.3d 631, 646 (5th Cir. 2013). "In resolving whether a plaintiff has sufficiently alleged a bystander liability claim we also consider whether an officer 'acquiesce[d] in' the alleged constitutional violation." *Id.* (quoting *Hale v. Townley*, 45 F.3d 914, 919 (5th Cir. 1995)).**

All the Officers at the scene are liable as bystanders for witnessing but not stopping the unreasonable arrest specifically the misconduct of the other Officers. There was a Fourth Amendment Constitutional violation plaintiff's bystander-liability claim should succeed. All the Officer's watched the action of Officer Brice Bishop and Matthew Chorzewski and did nothing to protect Hill. All the Officer's paused and waited for instructions as Officer Bishop received a phone call from a fellow Officer.

> While Mr. Hill is handcuffed, Austin Police Officer Bishop leaves Mr. Hill's car and returns to his own car to use his laptop for almost half an hour.[21] Officer Bishop goes through Mr. Hill's criminal history in hopes of finding a criminal conviction that would justify a charge. At first, he believes he found that Mr. Hill had a felony conviction but is mistakenly looking at a different Black man's criminal history. Officer Bishop speaks to another officer on the phone, letting him know Mr. Hill is a felon and that he has two convictions for possession of a firearm with a felony conviction.[22] During this

---

[21] *See id.* at 13:56.

[22] *See id.* at 29:50.

conversation, Officer Bishop's laptop shows the mugshot of a completely different individual sharing only one similarity with Mr. Hill – his race.

When he realizes his mistake, he tries again to search Mr. Hill's criminal history for a criminal conviction or anything else that would prohibit him from lawfully possessing a firearm. He even radios in a request for an e-mail with Mr. Hill's criminal history.[23] Officer Bishop fails to drum up any criminal conviction to prohibit Mr. Hill from lawfully owning a firearm, or anything else to support the arrest he had just made. At this point, Officer Bishop is frustratingly out of luck in conjuring a probable cause justification for an arrest he had already made.

Officer Bishop then toggles back and forth between his paperwork on Mr. Hill and the Texas Penal Code, reading slowly and meticulously through various subsections, trying to find any justification for Mr. Hill's arrest. While still looking through the Penal Code, Office Bishop receives a call on his cell phone and is asked to justify the detention.[24] He tells the officer on the other end of the line that, "[Mr. Hill] was detained because he was extremely intoxicated, had the weapon on his hip, and was, like, walking up and down the sidewalk." To be clear, the anonymous 311 call and the officers' body worn camera do not reflect Mr. Hill ever stepping onto the sidewalk. Officer Bishop then tells the other officer, "In terms of an actual violation, I'm, um, still having to figure that out at the moment....", making clear that Officer Bishop had no probable cause to believe that Mr. Hill had committed any crime.

Although Officer Bishop claimed that Mr. Hill was intoxicated, Police did not conduct any sobriety testing on Mr. Hill. Police found only one 12-ounce bottle of beer in the bed of Mr.

---

[23] *See id.* at 19:31.

[24] *See id.* at 22:00.

**15**

Hill's truck which was emptied of most of its contents by police. No additional alcohol was found near Mr. Hill and no sobriety testing or other investigation into intoxication was performed by police, aside from Officer Chorzewski's inquiry to an EMT on the scene about possible intoxication.[25] In an attempt to try to generate cause for Mr. Hill's arrest, Chorzewski asks the EMT, "Did you smell anything over there when you were talking to him?" The EMT unequivocally says, "No."

28. While Officer Bishop was in his car trying to justify the arrest of Mr. Hill, Officer Chorzewski was unequivocally told that police had no probable cause to justify the arrest of Mr. Hill on any weapon charge.[26] Officer Chorzewski spoke with Corporal Austin, who asked Chorzewski, "...Were you all trying to arrest him because he had a weapon?" Officer Chorzewski replies that he was, and officer Austin responds, "Well, thing is that, uh, Sergeant Metcalf reached out to Detective Maid and we don't have an arrest on anything gun related..."[27] Despite that fact, Officer Chorzewski still decided to go to his patrol car and bring it to the scene so he could put Mr. Hill inside of it, showing he would arrest him anyway.[28]

Mr. Hill was arrested immediately upon the arrival of police. He was held at gunpoint, ordered not to move, threatened with being shot, and handcuffed by police. All the while,

---

[25] *See* Officer Chorzewski BWC at 27:50
[26] *See id.* at 19:00.
[27] *Id.* at 19:10.
[28] *See id.* at 20:15.

**16**

Police Officers were abundantly aware they had no justification to support this arrest. Nonetheless, Mr. Hill was transported to jail and was being prosecuted on the instant charge.

Mr. Hill was charged in County Court 8 Travis County under Cause No. C-1-CR-21210751 with resisting arrest search or transport and he requested a Motion to Suppress which was Granted and all charges were dismissed on 3/21/2023.

Mr. Hill also has a dismissal under Cause N0. C-1-CR-21210750 which was supposed to be the charge "Intoxication" but on this dismissal it also states resisting arrest search or transport.

### PRAYER FOR RELIEF:

**WHEREFORE,** Plaintiff, Cedric Hill demands judgment and prays for the following relief, jointly and severally, against all Defendants.

a. Full and fair compensatory damages in an amount **of 20 million dollars**
b. Punitive damages,
c. Reasonable fees and costs of this action; and
d. Any such other relief as appears just and proper.

**17**

**"Economic damages" refer to tangible, monetary losses like medical bills, lost wages, and property damage that can be objectively calculated, while "non-economic damages" represent intangible losses such as pain and suffering, emotional distress, and loss of enjoyment of life, which are more subjective and difficult to quantify with exact monetary values; essentially, economic damages are the financial losses incurred due to an injury, while non-economic damages represent the personal impact of that injury on someone's life.**

Plaintiff is a truck driver whom makes his living working for companies in the oil field industry, Plaintiff lost the job he was working during the time of his arrest and every time the gets another job he is let go at the time the probationary period is to end. Plaintiff has suffered Economic damages as a result of this unlawful arrest.

Plaintiff is disabled and since the incident has spiraled mentally the Officer's stating they were going to take his life has really had a enormous effect on Plaintiff's mental state.

## RULE 38. RIGHT TO A TRIAL BY JURY DEMAND:

(a) Right Preserved. The right of trial by jury as declared by the Seventh Amendment to the Constitution—or as provided by a federal statute—is preserved to the parties inviolate.

(b)

Plaintiff Exercises his right to a trial by jury consistent with Rule 38. At the trial Plaintiff would like to address to the jury the issues outlined within this complaint.

18

**"Economic damages" refer to tangible, monetary losses like medical bills, lost wages, and property damage that can be objectively calculated, while "non-economic damages" represent intangible losses such as pain and suffering, emotional distress, and loss of enjoyment of life, which are more subjective and difficult to quantify with exact monetary values; essentially, economic damages are the financial losses incurred due to an injury, while non-economic damages represent the personal impact of that injury on someone's life.**

Plaintiff is a truck driver whom makes his living working for companies in the oil field industry, Plaintiff lost the job he was working during the time of his arrest and every time the gets another job he is let go at the time the probationary period is to end. Plaintiff has suffered Economic damages as a result of this unlawful arrest.

Plaintiff is disabled and since the incident has spiraled mentally the Officer's stating they were going to take his life has really had a enormous effect on Plaintiff's mental state.

## RULE 38. RIGHT TO A TRIAL BY JURY DEMAND:

(a) Right Preserved. The right of trial by jury as declared by the Seventh Amendment to the Constitution—or as provided by a federal statute—is preserved to the parties inviolate.

(b)
Plaintiff Exercises his right to a trial by jury consistent with Rule 38. At the trial Plaintiff would like to address to the jury the issues outlined within this complaint.

**18**

## 28 U.S. SECTION 1391

**(e)ACTIONS WHERE DEFENDANT IS OFFICER OR EMPLOYEE OF THE UNITED STATES.—**
**(1)IN GENERAL.—**
A civil action in which a defendant is an officer or employee of the United States or any agency thereof acting in his official capacity or under color of legal authority, or an agency of the United States, or the United States, may, except as otherwise provided by law, be brought in any judicial district in which (A) a defendant in the action resides, (B) a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (C) the plaintiff resides if no real property is involved in the action. Additional persons may be joined as parties to any such action in accordance with the Federal Rules of Civil Procedure and with such other venue requirements as would be applicable if the United States or one of its officers, employees, or agencies were not a party.

**(2)SERVICE.—**
The summons and complaint in such an action shall be served as provided by the Federal Rules of Civil Procedure except that the delivery of the summons and complaint to the officer or agency as required by the rules may be made by certified mail beyond the territorial limits of the district in which the action is brought.

## CERTIFICATE OF SERVICE:

I Cedric Earl Hill on March _12th_, 2025 Serve the Civil Suite Pursuant 42 U.S.C 1983 by walking the document into **UNITED STATES COURTHOUSE** 501 West 5th Street, Suite 3300 Austin, Texas 78701-3885

Plaintiff asks that to fulfill his Service of Process duties to the Defendants named in this action that the Clerk of this Court determine the amount necessary to serve defendant's and or their respective agency (Austin Police Department).

Respectfully                        Pro-Se
Cedric E. Hill 1011 Vance Jackson, No.708
San Antonio, Texas 78201

**19.**