IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| CEDRIC EARL HILL, | § | |
|          **Plaintiff,** | § | |
| V. | § | |
| | § | |
| JOSEPH MORAN, ARIKA AUSTIN, | § | A-25-CV-370-ADA-ML |
| TERRELL ELLIS, JAMES | § | |
| ALEXANDER, MATTHEW | § | |
| CHORZEWSKI, ANDRES PADILLA, | § | |
| GREGORY SWIGER, BLAKE | § | |
| ZIMMERMANN, BRICE BISHOP, | § | |
|          **Defendants.** | § | |

**REPORT AND RECOMMENDATION OF
THE UNITED STATES MAGISTRATE JUDGE**

TO THE HONORABLE ALAN D ALBRIGHT
UNITED STATES DISTRICT JUDGE:

Before the court are Defendants' Motion for Summary Judgment (Dkt. 29, Mot.), Plaintiff's Response (Dkt. 30, Resp.), Defendants' Reply (Dkt. 31, Rep.), and Hill's Response to Defendant's [sic] Reply (Dkt. 33).[1] After reviewing the pleadings and the relevant case law, and determining that a hearing is not necessary, the undersigned submits the following Report and Recommendation to the District Judge.

## I.   BRIEF BACKGROUND

Pro se Plaintiff Cedric Hill brings suit under 42 U.S.C. § 1983 against Austin Police Officers Joseph Moran, Arika Austin, Terrell Ellis, James Alexander, Matthew Chorzewski,

---

[1] The motion was referred by United States District Judge Alan D Albright to the undersigned for a Report and Recommendation as to the merits pursuant to 28 U.S.C. § 636(b), Rule 72 of the Federal Rules of Civil Procedure, and Rule 1 of Appendix C of the Local Rules of the United States District Court for the Western District of Texas. *See* Standing Order dated Feb. 27, 2025.

1

Andres Padilla, Gregory Swiger, Blake Zimmermann, and Brice Bishop related to his arrest on December 11, 2021. Dkt. 1 (Compl.).

On December 11, 2021, an Austin resident called into the City's 311 service and was transferred to 911. Exh. 3. The caller reported there was no emergency, but that a man was sitting on his truck bed/tailgate in a parking lot, blasting music, "trying to cause issues," and "probably trying to provoke a fight with anybody that walks past." The caller further stated he did not know if the man was drinking, "but he's definitely acting not sober." The caller stated he had seen earlier that the man had a pistol on his waist in a holster. The caller stated that the man had "absolutely not" threatened him with the gun. The caller told the dispatcher he called because he "didn't want somebody to actually get into a fight with him and end up shooting him 'cause they didn't know he had [a gun]."

Police responded to the location, and the incident was recorded by multiple officers' body-worn cameras and one camera inside a police vehicle. Mot. Exhs. 4-10. At least three officers approached Hill, who was sitting on his truck's tailgate in an apartment parking lot listening to music. The truck had been backed into the parking spot, and Hill's feet were on or over the sidewalk as he sat on the tailgate. The officers approached Hill from behind a row of cars that were parked on the street parallel to the sidewalk with their weapons drawn—including a rifle and a rifle or shotgun loaded with bean bag rounds. From behind a parked car, the officers ordered Hill to put his hands up, and when Hill first comes into frame, his hands are raised above his head. Mot. Exh. 5. A gun in Hill's hip holster is clearly visible, and Hill is wearing a body armor vest. Exh. 5. The lead Officer then repeatedly orders Hill to turn around and face away from them and threaten that he will be "impacted" if he does not comply. Exh. 5. Hill remains on the tailgate but slightly turns his body away from the officers and asks what it means to be impacted and also asks, "what

2

did I do?" Exh. 5. The lead Officer tells him impacted means hit with a bean bag round and orders him to turn around and put his hands on top of his head. Exh. 5. Hill repeatedly asks, "What did I do?" The lead Officer does not answer Hill's question and repeats his instructions. Exh. 5. Still not complying, but with his hands raised, Hill tell them, "I didn't broke no law. I didn't do nothing wrong." Exh. 5. The officers can be heard discussing that they are reluctant to further approach Hill. Exh. 5. The lead Officer then specifically instructs Hill to get off the tailgate and face away from them. Exh. 5. Hill complies, and the lead Officer orders him to walk back to the sound of his voice. Exh. 5. Hill responds that his leg is injured. The lead Officer repeats the command, and Hill again asks what he did. Exh. 5.

Another group of officers then arrive from the opposite direction of the street. Hill is standing on the sidewalk with his hands on his head and his back to the street. Exh. 5. He turns at the waist toward the new officers, and he is ordered to face forward. Exh. 5. The lead Officer's group then move closer to Hill, still on the street taking cover behind parked vehicles. Exh. 5. Hill is heard repeatedly asking, "What'd I do?" Exh. 5. After the lead Officer tells Hill to stop talking, Hill states he did not do anything wrong and asks the officers to identify themselves. Exh. 5. Hill is repeatedly ordered to face away from the officers and to keep his hands on his head.[2] Exh. 5. Hill states there are nine officers around him, and he has done nothing wrong. Exh. 5. When the lead Officer's group finally approach Hill, he is on the sidewalk with his hands on his head, and a bottle of beer is on the tailgate next to where he had been sitting. Exh. 5. Hill does not resist as the officers approach and handcuff him, but he can be heard asking, "What I do?" Exh. 5. The court notes that up until this point, Hill has been moderately compliant to the lead Officer's commands,

---

[2] In Exhibit 5, Hill is not in frame, so it is unclear whether Hill has turned to face the officers or has lowered his hands. However, the court notes that previous instructions, such as do not reach for your gun, were given when Hill was not reaching for his weapon.

and though he has questioned why he is being approached, he has referred to the officers as "Officer" or "sir." Exh. 5.

However, after he was handcuffed, Hill became belligerent, yelling and cursing at the officers. Exh. 5. Hill requested EMS be called, but when they arrived, he refused to allow them to check his pulse. Exh. 5. One officer asked Hill if he had been drinking, and Hill said he had drank two beers but that he did not finish the second beer because officers poured it out. Exh. 5. One officer can be heard asking another if the officer "smells that," to which the officer affirmatively replied. Exh. 5. The officer then asked if Hill's eyes were bloodshot and shone a light towards his eyes. Exh. 5. That officer announced they would put Hill in his car and told Hill he believed Hill was intoxicated, which Hill denied. Exh. 5.

Hill then sat down on the sidewalk and claimed he could not stand because his leg was injured. The officers carried Hill to a police vehicle, over his shouts that they were assaulting him. Exh. 5. While in the vehicle, Hill continued yelling. Exh. 10.

After Hill was handcuffed, the officers began trying to determine a reason to arrest him. The lead Officer returned to his patrol car to run Hill's criminal history. Exh. 4. It was eventually determined that Hill did not have a criminal history that would justify a felon in possession charge.

The lead Officer eventually decided that Hill would be arrested for unlawful carrying of a weapon because he was intoxicated. *See* Dkt. 29-1 at 3. Hill was also charged with resisting transportation. Dkt. 29-1 at 9. A magistrate judge signed arrest warrants for both charges. Dkt. 29-1 at 304, 9-10. On March 21, 2023, both charges were dismissed after a motion to suppress was granted. Dkt. 29-1 at 7, 13.

On March 12, 2025, Hill filed this suit against eleven officers involved in his arrest. He asserts claims for: Count 1) a "warrantless no probable cause unreasonable arrest/seizure" under

the fourth amendment and section 1983; Count 2) "malicious prosecution" under the fourth amendment and section 1983; Count 3) false arrest or imprisonment;[3] and Count 4) bystander liability under section 1983 for the officers' failure to stop his arrest. Dkt. 1. Defendants have moved for summary judgment, asserting Hill's false arrest and false imprisonment claims are barred by the statute of limitations, Defendants had probable cause to arrest Hill, qualified immunity bars this lawsuit against them, and any state law claims are barred by governmental immunity. Dkt. 29.

## II.    SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate only "if the movant shows there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A dispute is genuine only if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254 (1986).

The party moving for summary judgment bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrates the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmoving party to establish the existence of a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–87 (1986); *Wise v. E.I. Dupont de Nemours & Co.*, 58 F.3d 193, 195 (5th Cir. 1995). The parties may satisfy their respective burdens by tendering depositions, affidavits, and other competent evidence. *Estate of Smith v. United States*, 391 F.3d 621, 625 (5th Cir. 2004). It is not the court's

---

[3] As Defendants note:

> While Mr. Hill captions Count III as "false arrest," he subsequently makes repeated references to false imprisonment. Dkt. 1 pp. 12-13. For this reason, and because false arrest is separately alleged in Count I, Defendants will treat Count III as a claim for false imprisonment. It is unclear whether Count III is intended as a claim under the Fourth Amendment or state law.

Dkt. 29 n.2. Hill does not challenge this categorization of his claims. Dkt. 30.

responsibility to hunt through the summary judgment record to determine if a party's arguments are supported by the record. *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003) ("When evidence exists in the summary judgment record but the nonmovant fails even to refer to it in the response to the motion for summary judgment, that evidence is not properly before the district court."); *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998) ("Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment.").

The court will view the summary judgment evidence in the light most favorable to the non-movant. *Griffin v. United Parcel Serv., Inc.*, 661 F.3d 216, 221 (5th Cir. 2011). The non-movant must respond to the motion by setting forth particular facts indicating that there is a genuine issue for trial. *Miss. River Basin Alliance v. Westphal*, 230 F.3d 170, 174 (5th Cir. 2000). "After the non-movant has been given the opportunity to raise a genuine factual issue, if no reasonable juror could find for the non-movant, summary judgment will be granted." *Id*.

III.    **ANALYSIS**

A.      **Counts 1 and 3 False Arrest and Imprisonment Under Section 1983**

Limitations for a section 1983 claim are determined by the forum state's general or residual personal-injury limitations period. *Johnson v. Harris County*, 83 F.4th 941, 945 (5th Cir. 2023). Texas is the forum state, and its limitations period for personal injury claims is two years. *Id*. (citing TEX. CIV. PRAC. & REM. CODE § 16.003). "[T]he statute of limitations upon a § 1983 claim seeking damages for a false arrest in violation of the Fourth Amendment, where the arrest is followed by criminal proceedings, begins to run at the time the claimant becomes detained pursuant to legal process." *Wallace v. Kato*, 549 U.S. 384, 397 (2007); *Johnson*, 83 F.4th at 945. Similarly, because a section 1983 claim for false imprisonment is based upon detention without

legal process, limitations run once legal process is initiated. *Wallace*, 549 U.S. at 389–90; *Johnson*, 83 F.4th at 945-46. Legal process is initiated at a bond hearing. *Reed v. Edwards*, 487 F. App'x 904, 906 (5th Cir. 2012); *see also Szarf v. Sparks*, No. A-24-CV-01059-RP, 2025 WL 1403688 at *3 (W.D. Tex. Mar. 25, 2025) (false arrest and false imprisonment claims accrued on the night of arrest).

Hill was arrested on December 10, 2021, and he appeared at a bond hearing on December 12, 2021. Dkt. 29-1 at 2, 3, 8. He filed suit on March 12, 2025. Dkt. 1. Accordingly, his section 1983 claim for his arrest (count 1) is barred by limitations. To the extent his false imprisonment claim (count 3) is brought under section 1983 and not state law, it is also time barred.

Because limitations is dispositive on this issue, the court does not reach Defendants' qualified immunity arguments. Accordingly, the undersigned will recommend Defendants be granted summary judgment on Count 1 and Count 3, to the extent Count 3 is brought under section 1983.

### B.    Count 2 Malicious Prosecution

In the Fifth Circuit, the elements of a Fourth Amendment malicious prosecution claim are: (1) the commencement or continuance of an original criminal proceeding; (2) its legal causation by the present defendant against plaintiff who was defendant in the original proceeding; (3) its bona fide termination in favor of the present plaintiff; (4) the absence of probable cause for such proceeding; (5) malice; and (6) damages. *Armstrong v. Ashley,* 60 F.4th 262, 279 (5th Cir. 2023); *see also Santander v. Salazar*, 133 F.4th 471, 482 (5th Cir. 2025). Additionally, a plaintiff must prove the threshold element of an unlawful Fourth Amendment seizure. *Armstrong,* 60 F.4th at 279.

A malicious prosecution claim accrues when criminal proceedings end in favor of the claimant. *Johnson*, 83 F.4th at 945, n.2. The charges against Hill were dismissed on March 21, 2023. Dkt. 29-1 a 7, 13. Hill filed suit on March 12, 2025. Dkt. 1. Accordingly, this claim is not time barred.

"Qualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Santander*, 133 F.4th at 478. Before 2022, the Fifth Circuit did not recognize a federal claim for malicious prosecution. *Id*. at 482. In April 2022, the Supreme Court expressly recognized a section 1983 malicious prosecution claim in *Thompson v. Clark*, 596 U.S. 36, 42 (2022), abrogating Fifth Circuit case law that held no such claim existed. *Id*. at 482-83. But *Thompson* did not "lay out a comprehensive list of the elements for a Fourth Amendment malicious prosecution claim, and largely left the question of elements to the lower courts." *Id*. at 483. Only in February 2023 did the Fifth Circuit articulate the elements of a post-*Thompson* malicious prosecution claim in *Armstrong*. *Id*.

Hill was arrested on December 10, 2021, and he appeared at a bond hearing on December 12, 2021. Dkt. 29-1 at 2, 3, 8. Hill's arrest and charges were instituted both before *Thompson* and *Armstrong*. Therefore, with regard to Hill's section 1983 malicious prosecution claim, Defendants could not have violated clearly established law because, at the time, there was no clearly established law in this circuit to violate. *See Santander*, 133 F.4th at 483 (holding same where the incident at issue occurred after *Thompson* but before *Armstrong*).

Accordingly, the undersigned will recommend Defendants be granted summary judgment on Count 2.

### C.     Count 3 False Imprisonment Under State Law

Defendants move for summary judgment on the basis that, if Hill's false imprisonment claim is based on state law, it is barred by governmental immunity under the Texas Tort Claims Act. The TTCA provides a limited waiver of sovereign and governmental immunity for certain suits against governmental entities. *Mission Consol. Indep. Sch. Dist. v. Garcia*, 253 S.W.3d 653, 655 (Tex. 2008); TEX. CIV. PRAC. & REM. CODE § 101.021.  The TTCA governs all tort claims asserted against a governmental entity and serves as "the only, albeit limited, avenue for common-law recovery against the government." *Garcia*, 253 S.W.3d at 659. The TTCA does not waive immunity of governmental entities for intentional torts. TEX. CIV. PRAC. & REM. CODE § 101.057(2).

The TTCA includes an election-of-remedies provision, which "force[s] a plaintiff to decide at the outset whether an employee acted independently and is thus solely liable, or acted within the general scope of his or her employment such that the governmental unit is vicariously liable, thereby reducing the resources that the government and its employees must use in defending redundant litigation and alternative theories of recovery." *Garcia*, 253 S.W.3d at 657; *see* TEX. CIV. PRAC. & REM. CODE § 101.106. Under the election-of-remedies statute:

> (f) If a suit is filed against an employee of a governmental unit based on conduct within the general scope of that employee's employment and if it could have been brought under this chapter against the governmental unit, the suit is considered to be against the employee in the employee's official capacity only. On the employee's motion, the suit against the employee shall be dismissed unless the plaintiff files amended pleadings dismissing the employee and naming the governmental unit as defendant on or before the 30th day after the date the motion is filed.

TEX. CIV. PRAC. & REM. CODE § 101.106(f).

Hill's state-law false imprisonment claim is an intentional tort, squarely falls under subsection (f), and more than 30 days have passed since Defendants have filed their motion. *See*

Dkt. 29 (filed January 23, 2026). Accordingly, Hill's claim is subject to the TTCA, and Defendants are entitled to governmental immunity. As such, the undersigned will recommend Defendants be granted summary judgment on Count 3.

### D.    Count 4 Bystander Liability Under Section 1983

Hill's bystander liability claim is based on the failure of any officer to stop his arrest. He pleaded that "Defendants observed an unreasonable seizure and other constitutional violations being committed by their counterparts." Dkt. 1 at 12. He also pleaded "Defendant's [sic] . . . allowed their fellow officer to arrest Plaintiff without probable cause and otherwise violate Plaintiffs' [sic] constitutional and statutory rights." Dkt. 1 at 13. And, "All the Officers at the scene are liable as bystanders for witnessing but not stopping the unreasonable arrest specifically the misconduct of other Officers." *Id.*

"[A]n officer may be liable under § 1983 under a theory of bystander liability where the officer (1) knows that a fellow officer is violating an individual's constitutional rights; (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act." *Whitley v. Hanna*, 726 F.3d 631, 646 (5th Cir. 2013). Bystander liability most often applies in the context of excessive force claims, but other constitutional violations also may support a theory of bystander liability. *Id.* at 647 n.11.

Defendants contend they are entitled to qualified immunity because "the Fifth Circuit has not specified which constitutional violations, beyond excessive force, may underlie a bystander claim." Dkt. 29 at 8 (quoting *Corral v. El Paso County,* No. EP-22-CV-00160-DCG, 2025 WL 24216 at *8 (W.D. Tex. Aug. 15, 2025). Accordingly, Defendants argue "it was not clearly established in December 2021 that an official could be held liable under a theory of bystander

liability when the underlying constitutional violation is false arrest, false imprisonment or malicious prosecution." *Id*.

This argument presents a unique question of the second prong of the qualified immunity analysis—whether it is the plaintiff's constitutional right or the defendant officer's potential liability that must be clearly established. *See Lytle v. Bexar County*, 560 F.3d 404, 410 (5th Cir. 2009) ("The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.").

But here, as in *Corral*, it is easier to avoid the question altogether and determine whether Defendants, who were present at the scene and collectively participated in the false arrest,[4] are themselves liable for false arrest. *See Corral,* 2025 WL 24216 at *8 ("[I]t makes little sense to ask whether each individual defendant failed to intervene in another officer's deliberate indifference to [inmate's] safety; instead, the court simply considers whether each individual defendant acted with deliberate indifference."). As noted above, Hill's false arrest claim fails because he brought it out of time. Moreover, any bystander liability claim would also independently be barred by the limitations period.

Accordingly, the undersigned will recommend Defendants be granted summary judgment on Count 4.

### E.     Conclusion

For the reasons given above, Defendants are entitled to summary judgment on each of Hill's claims.

---

[4] Defendants assert that Defendant Commander Alexander was not present at the scene and only spoke to Hill when he called about having his weapons returned. *See* Dkt. 29 at 8. But the only evidence to support this assertion is a video recording of the phone call. Exh. 9. While Exhibit 9 proves the phone call, it does not prove the assertion that Commander Alexander was not present at the scene.

**IV.    RECOMMENDATIONS**

The undersigned **RECOMMENDS** that the District Judge **GRANT** Defendants' Motion for Summary Judgment (Dkt. 29) and **DISMISS THIS CASE WITH PREJUDICE**.

The referral of this case to the Magistrate Judge should now be **CANCELED.**

**V.    OBJECTIONS**

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *See Battles v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from de novo review by the District Court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140, 150-53 (1985); *Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415 (5th Cir. 1996)(en banc).

SIGNED March 12, 2026.

_____
MARK LANE
UNITED STATES MAGISTRATE JUDGE